SEYFARTH SHAW LLP
D. Joshua Salinas (SBN 282065)
*jsalinas@seyfarth.com*
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

SEYFARTH SHAW LLP
Robert C. Stevens (admitted *pro hac vice*)
*bstevens@seyfarth.com*
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309-3958
Telephone: (404) 885-1500

Attorneys for Plaintiff
VERITIV LANDSBERG

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

VERITIV LANDSBERG, a California corporation,

Plaintiff,

v.

ANTHONY MORA, an individual,

Defendant.

Case No. 8:25-cv-02418-JVS-ADS

**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**

**1) BREACH OF DUTY OF LOYALTY;**

**2) VIOLATION OF CALIFORNIA PENAL CODE § 502;**

**3) VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT;**

**4) FRAUD BY FALSE PROMISE;**

**5) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**

**6) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**

**7) CONVERSION;**

**8) TRADE SECRET MISAPPROPRIATION (VIOLATION OF THE DEFEND TRADE SECRETS ACT);**

**9) TRADE SECRET MISAPPROPRIATION (VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT); AND**

**10) UNFAIR COMPETITION.**

**JURY TRIAL DEMANDED**

Plaintiff Veritiv Landsberg ("Veritiv" or "Plaintiff") submits the following First Amended Complaint ("Complaint") against Defendant Anthony Mora ("Mora" or "Defendant"). Veritiv alleges and states as follows:

## NATURE OF CASE

1. Veritiv is a market leader in print, packaging, and facility solutions, serving a wide range of industries across North America. Veritiv's ability to thrive in these highly competitive industries depends on its effective use of trade secrets, confidential information, and proprietary systems.

2. Veritiv has expended substantial time and resources in the research and development of the intellectual property that is essential to its success. As such, Veritiv maintains a large volume of confidential, proprietary, and trade secret information regarding its packaging designs and specifications, customer and project data, pricing strategies, manufacturing processes, and other proprietary materials and systems. Such confidential, proprietary, and trade secret information is of great value to Veritiv and would give any competitor who improperly acquired such information an unfair competitive advantage by being able to bypass investing the substantial time and resources that Veritiv has invested to research and develop this commercially valuable secret information.

3. As detailed below, Veritiv is informed and believes that Defendant Mora engaged in a calculated and deceptive effort to misappropriate Veritiv's confidential, proprietary, and trade secret information in the weeks leading up to his resignation. Indeed, when caught transferring documents and files, Mora only made matters worse by lying to Veritiv and taking deliberate steps to conceal evidence of misconduct.

4. Despite being expressly instructed to cease transferring company files to external drives and to cease the use of such drives, Mora surreptitiously continued to copy hundreds of thousands of sensitive documents to multiple external storage devices.

5. Over the course of several days, Mora transferred more than 700,000 Veritiv files, including proprietary packaging designs, customer data, and confidential project materials, to personal external hard drives. Many of these files were marked "CONFIDENTIAL AND PROPRIETARY" and contained information critical to Veritiv's competitive advantage.

6. Veritiv's ongoing investigation has revealed that Mora inserted at least **seven** external USB devices into his Veritiv issued computer in the 60 days prior to his resignation. And, despite instructions to return them when he separated from Veritiv, **three of those drives remain missing**, and Mora has either reformatted or deleted files from three drives he did return in a deliberate effort to conceal the data transfers and avoid detection.

7. These deletions likely destroyed critical evidence, including metadata that would have revealed, when, how and by whom the files were accessed, used, and/or disclosed.

8. Furthermore, by stealing hundreds of thousands of highly valuable Veritiv files, Veritiv is informed and believes Mora intended to steal the lifeblood of Veritiv's design business for his own personal benefit.

9. Mora failed to return and account for all of Veritiv's confidential, proprietary, and trade secret information in his possession or explain where he transferred such information, which caused Veritiv to bring this action.

10. On October 31, 2025, this Court issued an Order entering Veritiv and Mora's Stipulated Preliminary Injunction. The Order prohibits Mora from using or disclosing Veritiv's trade secrets and requires him to, among other things: return all Veritiv property and devices; provide a sworn inventory; produce accounts and devices for forensic inspection; identify retained information and customer contacts; and produce phone and text logs by specified deadlines.

11. If Mora and those acting in concert with him are not permanently enjoined from further unfair and unlawful activities through the acts complained of, including the misappropriation of Veritiv's confidential information and trade secrets, Veritiv will be irreparably harmed. Veritiv will continue to suffer irreparable loss of its valuable trade secrets and confidential information, disruption of its customer relationships, and erosion of its competitive position in the marketplace.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq.*, the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.*, and 28 U.S.C. § 1331.

13. This Court has supplemental jurisdiction over claims in this Complaint that arise under state statutory and common law pursuant to 28. U.S.C. § 1367(a) in that the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

14. Venue is proper under 28 U.S.C. § 1391(b), and more specifically, assignment to this District and Division is proper because it is where a substantial part of the events or omissions giving rise to Veritiv's claims occurred and where Veritiv resides.

15. This Court has personal jurisdiction over Mora because he is a citizen of California.

///

///

## THE PARTIES

16. Veritiv is a California corporation with its principal place of business located at 6600 Valley View Street, Buena Park, California 90602. Veritiv is, and at all times mentioned was, authorized to conduct business in the State of California. On December 11, 2024, Veritiv's parent corporation acquired Mora's then employer, Orora Packaging Solutions ("Orora").

17. Orora has a long history going back to May 14, 1951, when the Kent H. Landsberg Company, Inc. was first incorporated in California. On June 24, 1983, Kent H. Landsberg Company, Inc. changed its name to Sunclipse, Inc. On March 30, 1999, Sunclipse, Inc. changed its name to Amcor Sunclipse North America. Then, on February 23, 2010, Amcor Sunclipse North America changed its name to Amcor Packaging Distribution. On December 18, 2013, Amcor Packaging Distribution changed its name to Orora North America. On October 29, 2014, Just In Time, Inc., a wholly owned subsidiary of Orora North America incorporated in California on October 11, 1988, changed its name to Landsberg Orora. On January 1, 2015, Orora North America separated its distribution side of the business from the headquarters and Landsberg Orora became the distribution entity. Finally, on July 26, 2016, Orora North America changed its name to Orora Packaging Solutions.

18. Upon information and belief, Defendant Mora is an individual residing in South Gate, California.

## GENERAL ALLEGATIONS

### Veritiv's Business

19. Veritiv is in the highly competitive business of marketing, selling, and distributing packaging, facility solutions, and print and publishing products and services throughout North America.

20. Veritiv's ability to survive in this highly competitive industry depends on its effective use of trade secrets, confidential information, and proprietary systems, as well as, its ability to develop and retain a market-leading team.

21. Veritiv's skilled salesforce works closely with a network of customers and vendors and provides product development and operational support, thus furthering its position as a market leader in the industry. Over the years, Veritiv successfully built its packaging business and team through training and developing a highly skilled workforce and developing and growing longstanding customer relationships.

22. Veritiv's products are used in, or intended for use in, interstate and/or foreign commerce.

23. Veritiv's client and business relationships, including confidential information about those relationships, are the lifeblood of its business. Veritiv's employees are successful in their work for Veritiv by virtue of their access to Veritiv's confidential information.

**Veritiv's Confidential, Proprietary, and Trade Secret Information**

24. Veritiv has expended substantial time and resources in the research and development of the intellectual property that is essential to its success. As such, Veritiv maintains a large volume of confidential, proprietary, and trade secret information regarding its research plans and strategies, past, present, and future products and services, developments, processes, and other proprietary information and materials. This also includes correspondence, documents, and other property (whether tangible or intangible) that Veritiv owns pursuant to California Labor Code section 2860[1] that do not qualify as a trade secret under applicable state or federal law.

25. To maintain Veritiv's long-standing client relationships, develop new relationships and maintain its place as a market leader, Veritiv expends substantial time, effort, and expense developing confidential business information and trade secrets, which include, but are not limited to: packaging designs; detailed information about the identities and requirements of current and prospective customers; detailed information

[1] California Labor Code section 2860 states: "Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment."

about the ordering histories of current customers; customer pricing, pricing strategies, and sales and margin data; and business methods, strategies, and plans, including prospective customers and sales strategies and methods.

26. Veritiv's confidential, proprietary, and trade secret information is of great value to Veritiv and would give any competitor who improperly acquired such information an unfair competitive advantage by being able to bypass investing the substantial time and resources that Veritiv has invested to research and develop this information.

**Veritiv's Trade Secrets and/or Confidential Information Are Vital to Its Business and Not Generally Known to The Public**

27. Veritiv's confidential and proprietary business information and trade secrets, which include packaging designs, product costs, margins, discounts, and pricing strategies, are stored on Veritiv's secure computer system, in password-protected files. In addition, the information is compiled and stored in password protected electronic databases and cloud-based storage systems, including a proprietary business application through which Veritiv tracks its sensitive and confidential information including packaging designs.

28. Veritiv also states on many of its confidential and proprietary documents that "All drawings, designs and information contained herein are confidential and proprietary information and may not be shared without express permission."

29. Veritiv has also implemented data protection loss software to add another layer of production to prevent and/or uncover the potential loss of information.

30. Veritiv's trade secrets and/or confidential information as generally described in this Complaint are not generally known in the packaging solutions industry or elsewhere and Veritiv derives economic value from the fact that the information is not publicly available.

///

///

31. Veritiv's trade secrets and/or confidential information are generally not known because Veritiv aggregated and created them and holds them in confidence as described in this Complaint.

32. Veritiv's trade secrets and/or confidential information would be of great value to any of Veritiv's competitors for many of the same reasons they are valuable to Veritiv.

33. Veritiv has spent extensive time and substantial money identifying and maintaining key customer relationships, designing customer packaging and packaging solutions, determining strategic acquisitions, allocating resources for new technologies and initiatives, and developing and launching new products. For example, Veritiv works closely with its customers, suppliers, and vendors to develop customized packaging and services to meet its customers' particular specifications. By developing such long-term relationships, Veritiv gains a deep understanding of its customer's needs, and is able to develop and design customized service packaging for them.

34. If taken by a competitor, Veritiv's trade secrets and/or confidential information would give the competitor an unfair competitive advantage by, among other things: (a) not having to expend the time and resources to develop and maintain the information as Veritiv has; (b) allowing the competitor to quickly develop strategies, plans, and other products or services to unfairly compete with Veritiv in order to diminish Veritiv's hard-earned head start; (c) enabling the competitor to generate customer packaging samples using Veritiv's proprietary design and cutting files without having to invest the time, skill, and labor required to create such samples manually, thereby shortcutting a critical part of Veritiv's customer engagement and product development process; and (d) alerting the competitor to certain products, services, or other ideas that should or should not be pursued.

35. Veritiv's trade secrets, in the hands of a competitor, would also show the competitor what not to do, based on proposals or ideas that Veritiv determined were not

feasible. A competitor with access to Veritiv's trade secrets could avoid the costly trial-and-error process inherent in any engineering project, further saving time and costs.

**Veritiv Employs Significant Measures to Maintain the Confidentiality of Its Trade Secrets and/or Confidential Information**

36. Veritiv has spent significant sums of money in creating and implementing its confidential information, network and computer security, and business ethics policies that function to maintain the confidentiality of Veritiv's trade secrets and/or confidential information and protect it from unauthorized use, disclosure, or retention.

37. Veritiv also maintains a comprehensive Code of Business Conduct and Ethics ("Code of Conduct"), which is accessible to all employees via the company's intranet. The Code of Conduct reinforces Veritiv's commitment to protecting confidential, proprietary, and trade secret information and applies to all Veritiv employees and those acting on its behalf. It includes specific provisions regarding the safeguarding of Veritiv's information assets. For example, the Code of Conduct instructs employees: "You must take all precautions to protect [confidential commercial and personal information]. Do not take, use, or share this information for any nonbusiness-related purpose," and "Never store or transfer confidential information or sensitive PII to a personal device. This includes personal email, drives and cloud storage." The Code further emphasizes that "Confidential information should never be disclosed or shared with others – inside or outside of the company – without a business need and without taking proper security steps." These provisions reflect Veritiv's clear expectations and policies regarding the protection of its confidential information and underscore the seriousness of any unauthorized access, use, or disclosure.

38. Veritiv's trade secrets are valuable to Veritiv and their value lies primarily in being kept secret and not generally known. For that reason, Veritiv has taken considerable steps to maintain the secrecy of its trade secrets, such as: (a) requiring employees and contractors to affirmatively agree to Veritiv's Acceptable Use Policy before accessing its computer systems, including through an on-screen prompt that must

be accepted to proceed, which reinforces their obligation to use Veritiv's systems only for authorized business purposes and to protect confidential information; (b) utilizing confidentiality agreements with employees and contracts; (c) emphasizing to employees and contractors Veritiv's need to keep this information secret; (d) limiting access and/or restricting access to this information by employees and contractors on a need-to-know basis; (e) requiring unique usernames and passwords to access sensitive data on Veritiv's computer systems and databases; and (f) implementing a number of physical and electronic security measures, including restricting access to databases and network space, assigning passwords and user-level permissions to access information on Veritiv's computer system, servers, and networks, requiring VPN access to Veritiv's systems, using security cameras and retaining security footage, and requiring badges to access Veritiv's facilities.

39. Veritiv uses a proprietary database and corresponding software for certain employees to store and protect valuable trade secret information. Access to Veritiv's proprietary databases requires a password and is limited to certain employees on a need-to-know basis.

40. Veritiv also utilizes data prevention software to protect its information.

41. As part of his job duties and responsibilities for Veritiv, Mora had access to Veritiv's proprietary databases and network drives, subject to strict confidentiality and non-removal obligations, as well as computer usage policies.

**Defendant Mora was Subject To, Aware Of, and Agreed to be Bound by Veritiv's Confidentiality and Computer Use Restrictions**

42. Mora worked for Veritiv and its predecessor from approximately 1990 until he abruptly gave notice of his resignation on September 15, 2025, effective September 26, 2025. At the time of his departure, Mora served as Veritiv's Regional Design Manager.

43. Mora's job duties and responsibilities for Veritiv included overseeing packaging design projects, managing customer-specific design files and specifications,

coordinating with sales and production teams, and accessing Veritiv's proprietary systems to create and deliver custom packaging solutions. He also managed a team of designers. In performing these duties, Mora routinely accessed highly sensitive and confidential information, including customer data, pricing strategies, and proprietary design templates.

44. Throughout his employment with Veritiv and its predecessor, Mora was provided access to Veritiv's computer systems and confidential, proprietary, and trade secret information, subject to strict compliance with Veritiv's agreements and policies. These included Veritiv's Acceptable Use Policy, which Mora was required to affirmatively acknowledge before accessing Veritiv's systems, and which expressly prohibited unauthorized copying, transfer, or retention of company data.

**Defendant Mora Improperly Acquires Veritiv's Confidential, Proprietary, and Trade Secret Information**

45. On September 9, 2025, Mora initiated a mass transfer of Veritiv's confidential and proprietary files by copying thousands of Veritiv documents to a Seagate external hard drive ("Seagate Drive 1"). These transfers included sensitive customer packaging design files and development materials

46. Among the files Mora misappropriated were thousands of highly specialized packaging design documents, including native ArtiosCAD working files (known as "ARD files"), PDF outputs of those designs, and internal specification sheets. These materials reflect Veritiv's proprietary engineering and customer collaboration efforts and contain precise measurements, material compositions, cut and crease specifications, glue assist locations, and manufacturing notes. They also include internal tolerances, SAP material numbers, designer and sales rep identifiers, and customer-specific references, none of which are publicly available. The aggregation of these elements represents Veritiv's substantial investment in innovation, testing, and customer-specific customization.

47. ArtiosCAD is the industry-standard software used to develop packaging dielines. The content within the files Mora misappropriated reflecting Veritiv's engineering, customer collaboration, and design specifications, are proprietary and confidential. The PDF files associated with these ARD files are output representations of the designs and explicitly marked as confidential and proprietary, with language stating: "ALL DRAWINGS, DESIGNS AND INFORMATION CONTAINED HEREIN ARE CONFIDENTIAL AND PROPRIETARY INFORMATION AND MAY NOT BE SHARED WITHOUT EXPRESS WRITTEN PERMISSION."

48. The technical and commercial value of files Mora took is substantial. They reflect custom packaging solutions developed through significant time, cost, and expertise. Possession of these files allows a competitor, to bypass the design and testing process, replicate proprietary packaging, and potentially undercut Veritiv's pricing or poach its customers. The files also embed internal manufacturing workflows, which are unique to Veritiv's operations and not discernible from a finished product.

49. These ARD files and related materials are not merely technical drawings; they reflect Veritiv's customer relationships, business strategy, and internal quality control. Each file is the product of collaboration between Veritiv's design team, sales representatives, and the customer, embedding strategic decisions and service models that cannot be easily reverse engineered from a finished box.

50. Attempting to reverse engineer Veritiv's packaging from a physical sample would be time-consuming, costly, and imprecise. It would require extensive trial and error to approximate the original specifications, and even then, the competitor would lack access to Veritiv's internal quality control metrics, customer-specific design choices, and integration with Veritiv's proprietary systems. In contrast, Mora's unauthorized downloading of Veritiv's internal files provided him with exact, actionable data that bypassed the need for independent development and testing, giving him and any party he shared the files with an unfair competitive advantage.

51. On September 10, 2025, Mora copied thousands more confidential and proprietary Veritiv files to the same Seagate Drive 1.

52. On September 11, 2025, Veritiv's Senior Security Operations Manager identified Mora's mass file transfers during a routine review of activity logs generated by Veritiv's Proofpoint Insider Threat Management system. The logs revealed that Mora had transferred approximately 43,000 files over two days (over 16,000 on September 9, and 27,000 on September 10) to the Seagate Drive 1. The volume and timing of these transfers raised immediate concerns, prompting escalation of the matter internally for further investigation.

53. On Friday, September 12, 2025, Barbara Hamilton (Veritiv's Global Director of Design) scheduled and held a meeting with Erich Boese (Mora's manager) and Jill Nerf (HR Business Partner) to discuss Mora's mass transfer of company files and determine next steps. That meeting occurred at 2:00 p.m. Eastern. Immediately following that meeting, Boese scheduled a videoconference with Mora for 2:45 p.m. Eastern, which both he and Nerf attended. During that videoconference, Mora claimed he transferred or downloaded the files due to technical issues and planned to send the files to Veritiv's San Diego office. Nerf informed Mora that he should not send the drive to San Diego, nor should he copy or upload any additional files to external storage devices. She advised that further instructions would be provided by either herself or Boese.

54. Despite these express instructions, Mora did not upload the mass transferred files to SharePoint.

55. On September 13-14, 2025, however, Mora copied the mass transferred files from Seagate Drive 1 to a second Seagate external hard drive ("Seagate Drive 2"). These files included proprietary design specifications, folding patterns, cutting guides, and assembly instructions, among numerous other files that are critical to Veritiv's packaging solutions and difficult for competitors to replicate without access. Many of these files were marked confidential and proprietary. Veritiv is informed and believes that Mora conducted this mass file transfer from his home.

56. In total on September 13 and 14, 2025, Mora, less than 24 hours after being specifically instructed not to transfer or download files or folders to hard drives, transferred and/or downloaded over 700,000 files from Veritiv to Seagate Drive 2. Veritiv is further informed and believes that Mora selectively transferred specific folders containing sensitive customer and project data.

57. During this transfer of files and folders, Mora turned off the WiFi connection to his computer.

58. Mora also intentionally marked several of the folders hidden.

59. While Mora's transfer of these hundreds of thousands of files was on-going, Mora drafted his resignation letter from Veritiv.

60. Mora submitted his resignation to Veritiv on September 15, 2025, effective September 26, 2025. At the time, Mora represented that he had not yet accepted a job with another company and was planning to take a month off to spend time in Michigan. When pressed, Mora stated that he was "in talks" regarding other opportunities and acknowledged that, as a packaging designer, he would ultimately return to the packaging industry. Based on these representations, and not aware that Mora had disregarded Veritiv's instructions not to transfer files to a hard drive, Veritiv permitted Mora to work out his two week notice.

61. Veritiv's ongoing investigation has revealed that, notwithstanding Mora's notice of resignation, and against Veritiv's instructions, he continued to use external USB drives to copy and transfer Veritiv files.

62. On September 16, 2025, Mora copied thousands of additional Veritiv confidential and proprietary files, including files from Google Drive and DropBox, to a PNY USB drive. Veritiv is informed and believes that Mora subsequently connected this drive to a non-Veritiv computer, transferred thousands of files to a non-Veritiv computer and then deleted files from the PNY USB drive.

63. On September 25, 2025, Hamilton spoke with Mora regarding the return of all Veritiv property. Mora stated he would return his computer, phone, and "the drive."

Hamilton clarified that Veritiv was aware he had used multiple drives and instructed him not to delete, access, or otherwise do anything with the drives, and to return all drives "as is." Mora agreed.

**Defendant Mora Fails to Return Veritiv's Trade Secrets and/or Confidential Information**

64. On September 25, 2025, Mora inserted a Sandisk USB drive and continued copying Veritiv files, including more ArtiosCAD designs for customer packaging marked "CONFIDENTIAL AND PROPRIETARY." Mora dragged and dropped these Veritiv confidential files rather than transferring or downloading these files. Upon information and belief, Mora did this in an effort to avoid being caught stealing these files. Mora later connected this drive to a non-Veritiv computer and deleted the files.

65. On September 26, 2025, Mora returned his Veritiv-issued computer, phone, and other property, but he did not return all USB drives as promised. While he returned Seagate Drive 1, it had been reformatted and all data had been deleted.

66. Mora, however, did not delete the files on Seagate Drive 1 while it was inserted into a Veritiv computer. Rather, Mora inserted Seagate Drive 1 into a non-Veritiv computer to complete the deletion and reformatting, raising further concerns about the transfer of data to other devices.

67. Veritiv's ongoing investigation has revealed that, in the 60 days prior to Mora's resignation, he inserted at least seven external USB devices into his Veritiv computer. Mora did not return three of those drives, including Seagate Drive 2, which he transferred and/or downloaded over 700,000 Veritiv files to on September 13-14, 2025.

68. Of the three drives Mora returned, all had data deleted from a different computer, revealing that Mora accessed them using a non-Veritiv computer and possibly transferred data.

69. Although one of the three drives Mora did return was the PNY USB drive, when Mora returned it he informed Veritiv that the drive belonged to another former

Veritiv employee and did not inform Veritiv that he had copied thousands of files to that drive and deleted them before he returned the drive.

70. To date, Veritiv has not received the three missing USB drives, including Seagate Drive 2, nor has Mora accounted for the trade secret and confidential information transferred to those devices or the files deleted from the drives he did return.

71. Mora removed and retained Veritiv's trade secrets and confidential information in violation of Veritiv's policies and express instructions.

72. Mora misrepresented to Veritiv the extent of his possession of Veritiv's trade secrets and confidential information and retained such property for his own personal benefit and gain.

73. The information Mora took is confidential, proprietary, and highly valuable to Veritiv's business operations and competitive position.

74. There was no legitimate business purpose for Mora to access or transfer these files to personal storage devices, particularly given the timing of his resignation and the nature of the data involved.

75. Veritiv has been damaged as a result of Mora's misconduct.

**Defendant Mora's Actions Will Cause Irreparable Harm to Veritiv and Should be Permanently Enjoined**

76. Veritiv will be irreparably harmed if Mora and all those acting in concert with him are not ordered to stop.

77. Mora's conduct threatens the valuable trade secrets and other intellectual property that Veritiv has expended substantial time and resources to develop. This information is extremely valuable to Veritiv and necessary for its continued business operation. Unless Mora and all those acting in concert with him are permanently restrained, the intellectual property Veritiv has developed over the years will be irreparably harmed.

78. Veritiv has invested considerable time and money in the development of the trade secrets and/or confidential information misappropriated by Mora. If they and all

those acting in concert with him are not permanently restrained, they will have an unfair competitive advantage over Veritiv and will continue to improperly utilize this information for their own benefit and to the detriment of Veritiv.

79. Permanent injunctive relief is necessary and appropriate because Mora continues to retain Veritiv's trade secrets and/or confidential information unlawfully. The injuries suffered by Veritiv cannot be compensated by money alone.

80. Mora has already caused Veritiv monetary damage. If Mora and all those acting in concert with him are allowed to continue unrestrained, it is certain that they will continue to cause irreparable harm to Veritiv's business. His actions are causing immediate and irreparable injury, loss, and damage to Veritiv.

## FIRST CLAIM FOR RELIEF FOR BREACH OF DUTY OF LOYALTY
## (Against Defendant Mora)

81. Veritiv hereby incorporates by reference and realleges each of the allegations above as though fully set forth in their entirety in this claim for relief, specifically excluding, however, those discrete allegations that solely allege misappropriation of Veritiv's trade secrets. This cause of action is not based on the misappropriation of any trade secrets. Rather, Veritiv bases this cause of action on the actions of Mora while he was still employed by Veritiv in breach of his fiduciary duties to Veritiv, including but not limited to engaging in deceptive conduct, violating company policies, and acting in direct conflict with Veritiv's interests.

82. Veritiv employed Mora in a position of trust and confidence. While so employed, Mora was under a duty to act solely for the benefit of Veritiv and not contrary to Veritiv's interests with respect to all matters connected with his employment relationship.

83. While so employed in this position of trust and confidence, Mora breached his duty to Veritiv as described above by, among other things, falsely promising to return all Veritiv property and comply with Veritiv's Acceptable Use Policy, secretly transferring and retaining Veritiv's files and data in violation of company instructions,

and taking steps against Veritiv's interests while still employed by Veritiv. These actions were taken for Mora's personal benefit and to the detriment of Veritiv, and are independent of any alleged misappropriation of trade secrets.

84. As a proximate result of Mora's breach of his duty of loyalty, Veritiv has suffered actual and/or consequential damages in an amount to be proven at the time of trial, but in excess of the minimum jurisdictional amount of this Court.

85. In committing the breach of duty as described above, Mora was guilty of malice and/or oppression with the deliberate intent to injure Veritiv's business, and Mora acted with conscious disregard for Veritiv's rights and his own duty to Veritiv, thereby warranting an award of punitive damages in an amount appropriate to punish Mora and deter others from engaging in similar misconduct.

## SECOND CLAIM FOR RELIEF FOR VIOLATION OF CALIFORNIA PENAL CODE § 502

**(Against Defendant Mora)**

86. Veritiv hereby incorporates by reference and realleges each of the allegations above as though fully set forth in their entirety in this claim for relief, specifically excluding, however, those discrete allegations that solely allege misappropriation of Veritiv's trade secrets. This cause of action is not based on the misappropriation of trade secrets. Rather, Veritiv bases this cause of action on Mora's unauthorized access to and misuse of Veritiv's computer systems and data while he was still employed, including accessing Veritiv's systems in excess of his authorization, copying and transferring files in violation of Veritiv's Acceptable Use Policy and internal protocols, and using Veritiv's computer services for purposes unrelated to his job duties and in direct violation of Veritiv's instructions. These actions constitute independent violations of California Penal Code § 502 and are wrongful regardless of whether the data accessed or transferred qualifies as trade secrets under California law.

87. California Penal Code Section 502 defines its statutory violations as criminal acts with criminal penalties.

88. Although Penal Code Section 502 imposes criminal penalties for certain computer-related crimes, it also creates a private right of action that entitles the owner or lessee of a computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of Section 502(c) to bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief. *See* Cal. Penal Code § 502(e).

89. When the Legislature enacted Penal Code Section 502, it intended to expand the degree of protection afforded to individuals, businesses, and governmental agencies in California from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems. Penal Code Section 502(a) provides in relevant part:

> The Legislature finds and declares that the proliferation of computer technology has resulted in a concomitant proliferation of computer crime and other forms of unauthorized access to computers, computer systems, and computer data.
>
> The Legislature further finds and declares that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data.

90. California Penal Code Section 502(j) also provides that jurisdiction exists at the location of the targeted computer, computer system, or computer network:

> For purposes of bringing a civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction.

91. Veritiv is the owner of data, computers, computer systems, and computer networks in or connected to California, which Veritiv uses for purpose of conducting its California-based business.

92. Veritiv provided Mora access to its data subject to strict compliance with the Agreement and its instructions. Such data includes, but is not limited to, Veritiv's information in its proprietary databases, network drives, and computers.

93. California Penal Code Section 502(c)(1) creates a private right of action against anyone who knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data, regardless of whether the defendant has accessed any of the plaintiff's computers.

94. California Penal Code Section 502(c)(2) creates a private right of action against anyone who knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

95. California Penal Code Section 502(c)(3) creates a private right of action against anyone who knowingly and without permission uses or causes to be used computer services.

96. California Penal Code Section 502(c)(4) creates a private right of action against anyone who knowingly and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.

97. California Penal Code Section 502(c)(7) creates a private right of action against anyone who knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

98. Mora has violated and continues to violate California Penal Code Section 502(c)(1) by knowingly copying and without permission storing, using, or making multiple copies of Veritiv's data to devise or execute a scheme to defraud or deceive, or to wrongfully control or obtain money, property, or data.

99. Mora has violated and continues to violate California Penal Code Section 502(c)(2) by knowingly and without permission accessing, taking, copying, or making use of data from Veritiv as alleged herein.

100. Mora has violated and continues to violate California Penal Code Section 502(c)(3) by knowingly and without permission using or causing to be used Veritiv's computer services.

101. Mora has violated and continues to violate California Penal Code Section 502(c)(4) by knowingly and without permission adding, altering, damaging, deleting, or destroying any data, computer software, or computer programs which reside or exist internal or external to a Veritiv computer, computer system, or computer network.

102. Mora has violated and continues to violate California Penal Code Section 502(c)(7) by knowingly and without permission accessing or causing to be accessed Veritiv's computer, computer system, or computer network.

103. In taking the actions alleged above, Mora have violated California Penal Code Section 502.

104. As an actual and proximate result of Mora's conduct, Veritiv has suffered losses including, but not limited to, the internal and external investigation costs associated with identifying the extent of Mora's wrongful conduct and attempting to recover the wrongfully accessed, used, taken, copied, and retained data, including by hiring computer forensic investigators and attorneys, among other losses. Veritiv reasonably and necessarily incurred these expenditures to verify whether or not its computer systems, computer network, computer programs, and data were or were not altered, damaged, or deleted by Mora's conduct. Veritiv continues to suffer these losses.

105. As a direct and legal result of Mora's unlawful conduct within the meaning of California Penal Code Section 502, Veritiv has suffered recoverable damages in an amount subject to proof at trial.

106. Mora has accessed, used, taken, copied, and retained Veritiv data and other property without Veritiv's permission. Veritiv has suffered irreparable injury from these

acts, and due to the continuing threat of such injury, has no adequate remedy at law. Accordingly, Veritiv is entitled to injunctive relief and other equitable relief, including, without limitation, permanent injunctive relief, restitution, and disgorgement of any and all profits or other benefits that Mora have obtained in connection with their alleged misconduct.

107. Veritiv is informed and believes and based thereon alleges that Mora, in doing the things herein alleged, acted willfully, maliciously, oppressively, and despicably with the full knowledge of the adverse effect of their actions on Veritiv, and with willful and deliberate disregard of the consequences to Veritiv. By reason thereof, Veritiv is entitled to injunctive relief, and to recover punitive damages from Mora in an amount to be determined at the time of trial.

108. Pursuant to California Penal Code Section 502, Veritiv is entitled to recover from Mora its reasonable attorneys' fees.

**THIRD CLAIM FOR RELIEF FOR**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**
**(Against Defendant Mora)**

109. Veritiv hereby incorporates by reference and realleges each of the allegations above as though fully set forth in their entirety in this claim for relief, specifically excluding, however, those discrete allegations that solely allege misappropriation of Veritiv's trade secrets. This cause of action is not based on the misappropriation of trade secrets. Rather, Veritiv bases this cause of action on Mora's unauthorized access to and use of Veritiv's protected computers and systems, including accessing Veritiv's computers in excess of his authorization, copying and transferring files in violation of Veritiv's Acceptable Use Policy and internal protocols, and using Veritiv's computer services for purposes unrelated to his job duties and in direct violation of Veritiv's instructions. These actions constitute independent violations of the Computer Fraud and Abuse Act (CFAA), regardless of whether the data accessed or transferred qualifies as trade secrets under federal or state law.

110. As set forth above, Mora violated the CFAA by intentionally accessing Veritiv's computers used for interstate commerce or communication, without authorization, and/or by exceeding authorized access to such computers and by obtaining information from such a protected computer, and so causing significant damage.

111. Mora knowingly, and with intent to defraud Veritiv through his wrongful actions, by accessing Veritiv's protected computers without authorization or by exceeding authorized access to such computers, and by means of such conduct, furthering his intended fraud and obtaining one or more things of value.

112. Mora violated the CFAA by intentionally accessing Veritiv's protected computers, without authorization and/or beyond the scope of authorization granted, causing damage to Veritiv, recklessly or without regard for his actions.

113. Through Mora's unauthorized access on Veritiv's protected computers and systems, Mora knowingly, and with intent to defraud, transmitted information and/or programs, misappropriated and caused harm to Veritiv, and impaired the integrity and availability of data, metadata, programs, systems, and other information.

114. Veritiv's investigation to date has revealed that, in fact, Mora has deleted and removed Veritiv's data.

115. Mora's actions as set forth above are direct violations of the CFAA—at minimum, 18 U.S.C §§ 1030(a)(2), 1030(a)(4), and 1030(a)(5)—for which Veritiv is entitled to injunctive relief. *See* 18 U.S.C § 1030(g).

116. As a direct and proximate result of Mora's conduct, Veritiv has suffered damages in excess of $5,000.00, including but not limited to costs associated with investigation of the nature and extent of Mora's unlawful actions, including employee time spent uncovering and investigating Mora's unauthorized access; the loss, dilution, and unlawful use of Veritiv's property; the anticipated forensic damage assessment of the computers; employee time spent investigating the unauthorized access; lost revenues and/or other consequential damages resulting from the interruption of service; and/or anticipated remediation of Mora's unlawful actions, including restoring the data, systems,

and information prior to the offense and/or implementing security enhancements and remedial measures to Veritiv's computer systems.

117. As a direct and proximate result of Mora's unauthorized access to Veritiv's protected computers, Mora have further been unjustly enriched.

118. As a direct and proximate result of Mora's unlawful conduct, Veritiv have also suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of data, and other continuing harm. The losses and harm to Veritiv are ongoing and cannot be remedied by damages alone.

## FOURTH CLAIM FOR RELIEF FOR FRAUD BY FALSE PROMISE
## (Against Defendant Mora)

119. Veritiv hereby incorporates by reference and realleges each of the allegations above as though fully set forth in their entirety in this claim for relief, specifically excluding, however, those discrete allegations that solely allege misappropriation of Veritiv's trade secrets. This cause of action is not based on the misappropriation of any trade secrets. Rather, Veritiv bases this cause of action on the actions of Mora while he was still employed by Veritiv, in breach of his fiduciary duties and through fraudulent misrepresentations.

120. On or after September 12, 2025, while still employed by Veritiv, Mora affirmatively represented to Veritiv that he would return all Veritiv property and would not copy, transfer, retain, or otherwise misuse any Veritiv files or information.

121. Veritiv is informed and believes and therefore alleges that Mora did not intend to perform this promise when he made it. Instead, Mora intended to retain, transfer, and use Veritiv's property for his own personal benefit.

122. Veritiv is informed and believes and therefore alleges that Mora made these promises with the intent that Veritiv would rely on them, and that such reliance would cause Veritiv to delay or modify its efforts to secure and recover its property. Mora further made these promises to obtain additional time to evade detection and to facilitate the unauthorized transfer, retention, and concealment of Veritiv's property.

123. Veritiv justifiably relied on Mora's promises, believing that he intended to cooperate and comply with his obligations, and therefore adjusted its internal recovery and investigative efforts accordingly.

124. Contrary to his promises, Mora transferred, retained, and/or destroyed Veritiv's property without its consent, including files and information stored on Veritiv's systems and devices.

125. As a direct and proximate result of Mora's false promises and deceptive conduct, Veritiv has suffered damages in an amount to be proven at trial. Veritiv has been unable to fully recover all of its property and has incurred costs in investigating and responding to Mora's misconduct.

126. Veritiv is informed and believes and therefore alleges that in engaging in such conduct, Mora acted with malice, oppression, and fraud, entitling Veritiv to an award of punitive damages pursuant to California Civil Code section 3294.

**FIFTH CLAIM FOR RELIEF FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(Against Defendant Mora)**

127. Veritiv hereby incorporates by reference and realleges each of the allegations above as though fully set forth in their entirety in this claim for relief, specifically excluding, however, those discrete allegations that solely allege misappropriation of Veritiv's trade secrets. This cause of action is not based on the misappropriation of any trade secrets. Rather, Veritiv bases this cause of action on the actions of Mora in engaging in breaches of duty of loyalty and fraudulent behavior.

128. Veritiv had on-going relationships with certain customers and other business relationships that were directly or indirectly serviced by Mora. Those sources had been valuable sources of business and Veritiv reasonably expected those relationships to continue into the future, generating a steady stream revenue.

129. Mora knew or should have known the identity of these Veritiv business relationships as a result of his employment with Veritiv.

130. Mora willfully and intentionally interfered with those relationships, without privilege to do so. Those relationships were, in fact, disrupted.

131. Mora's misconduct was independently tortious and unlawful

132. Veritiv was harmed by Mora's wrongful conduct, and Mora's conduct was a substantial factor in causing that harm, in an amount to be proven at trial.

133. In engaging in the wrongful conduct described above, Mora acted fraudulently, oppressively, maliciously and with a willful disregard of Plaintiff's rights. Accordingly, Plaintiff is entitled to exemplary and punitive damages pursuant to California Civil Code section 3294.

**SIXTH CLAIM FOR RELIEF FOR NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(Against Defendant Mora)**

134. Veritiv hereby incorporates by reference and realleges each of the allegations above as though fully set forth in their entirety in this claim for relief, specifically excluding, however, those discrete allegations that solely allege misappropriation of Veritiv's trade secrets. This cause of action is not based on the misappropriation of any trade secrets. Rather, Veritiv bases this cause of action on the actions of Mora in engaging and conspiring in anticompetitive conduct, breaches of duty, and fraudulent behavior.

135. Veritiv had on-going relationships with certain customers and other business relationships that were directly or indirectly serviced by Mora. Those sources had been valuable sources of business and Veritiv reasonably expected those relationships to continue into the future, generating a steady stream revenue.

136. Mora knew or should have known the identity of these Veritiv business relationships as a result of his employment with Veritiv.

137. Mora negligently interfered with those relationships, without privilege to do so. Those relationships were, in fact, disrupted.

138. Veritiv was harmed by Mora's wrongful conduct, and Mora's conduct was a substantial factor in causing that harm, in an amount to be proven at trial.

139. In engaging in the wrongful conduct described above, Mora acted fraudulently, oppressively, maliciously and with a willful disregard of Plaintiff's rights. Accordingly, Plaintiff is entitled to exemplary and punitive damages pursuant to California Civil Code section 3294.

**SEVENTH CLAIM FOR RELIEF FOR CONVERSION**
**(Against Defendant Mora)**

140. Veritiv hereby incorporates by reference and realleges each of the allegations above as though fully set forth in their entirety in this claim for relief, specifically excluding, however, those discrete allegations that solely allege misappropriation of Veritiv's trade secrets. This cause of action is not based on the misappropriation of any trade secrets. Rather, Veritiv bases this cause of action on the actions of Mora while he was still employed by Veritiv, in breach of his fiduciary duties and through fraudulent misrepresentations.

141. Veritiv owned and has rights under common law and the Labor Code to own and possess the documents, files, data, and other materials used and generated by its employees and contractors in the course of their duties for Veritiv. This includes but is not limited to, the documents accessible on its company networks and computer systems, and local drives at its offices – documents Mora shamelessly transferred *en masse* at the time of and shortly before his departure from Veritiv.

142. Mora's pre-departure activities were expressly prohibited by Veritiv's instructions, and by Veritiv policy. Mora knew at the time of engaging in those activities that Veritiv did not and would not consent to their improper retention of, misappropriation of, unauthorized copying of, and continued access to, any of its property.

143. Mora knowingly and intentionally interfered with Veritiv's property, interfered with Veritiv's rights of ownership and control over its property, sought to take possession of Veritiv's property, and failed to return Veritiv's property despite Veritiv's explicit demands.

144. Veritiv is informed and believes, and on that basis alleges, that Mora is using the documents, files, data, and other materials for his own benefit and to Veritiv's detriment, including, among other applications, to induce customers of Veritiv and its other business partners to transfer their business to Mora.

145. As a result, Veritiv has suffered to date, and will continue to suffer, damages in an amount to be proven at trial. Mora's conduct was a substantial, if not the sole, factor in bringing about all such damages.

146. Veritiv further alleges that, based on the facts known to it at this time, Mora's conduct was willful and malicious, justifying the imposition of statutory penalties and/or punitive damages.

## EIGHTH CLAIM FOR RELIEF FOR MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT (ACTUAL & THREATENED)

## (Against Defendant Mora)

147. Veritiv hereby incorporates by reference and realleges each of the allegations above as though fully set forth in their entirety in this claim for relief.

148. Veritiv's trade secrets alleged above constitute trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836.

149. Veritiv's trade secrets are valuable because they are not generally known or readily accessible, through proper means, to others who can profit from use of the trade secrets.

150. Veritiv has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including requiring unique usernames, passwords, and dual-factor authentication to access Veritiv's computer systems and records, restricting physical and electronic access to the most sensitive trade secret information to only those with a business need to know or access the information for purposes of performing their job for Veritiv, and having employees, contractors, and third parties sign agreements which expressly prohibit the use, removal, or disclosure of such information.

151. The foregoing conduct of Mora constitutes an actual and threatened misappropriation and misuse of Veritiv's trade secret information in violation of the Defend Trade Secrets Act, 18 U.S.C. §1836.

152. Mora's actions with respect to Veritiv's trade secrets, as alleged above, were a deliberate scheme and plan to deprive Veritiv of the benefits of Veritiv's own substantial investment and efforts and steal the fruits of decades of Veritiv's labor.

153. As a proximate result of Mora's actions as alleged above, Veritiv to date has suffered, and will continue to suffer, actual damages, including, but not limited to, loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be proven at trial. As a further proximate result of the misappropriation, Mora has been unjustly enriched through the misappropriation of Veritiv's trade secrets. The amount of this unjust enrichment cannot presently be ascertained.

154. Mora continues to possess, use, and disclose Veritiv's misappropriated trade secrets. The conduct of Mora therefore threatens further wrongful misappropriation, use, disclosure, and destruction of Veritiv's trade secrets.

155. As a proximate result of Mora's actions as alleged above, Veritiv will continue to suffer actual damages in an amount to be proven at trial unless Mora are enjoined.

156. Veritiv has no adequate remedy at law for these injuries unless and until Mora is restrained from using Veritiv's misappropriated trade secrets in the future and ordered to return such information and property to Veritiv, because calculations of damages will be difficult, and Veritiv will be compelled to bring multiple suits to protect its interests every time that its trade secrets and confidential information are misused or improperly disclosed. Veritiv's damages are not easily quantified but include, and are not limited to, its lost profits and productivity as a result of damage to its reputation, goodwill, disruption of its operations, and time and resources spent investigating the unlawful conduct of Mora, in an amount to be proven at trial.

157. Veritiv, therefore, is entitled to a permanent injunction, as prayed for herein, prohibiting Mora and all those acting in concert with him from further acts of misuse and disclosure of Veritiv's misappropriated trade secrets.

158. Veritiv is informed and believes that the conduct of Mora was, and is, malicious, fraudulent, deliberate, and willful, as revealed by his conduct described above. Veritiv is therefore entitled to recover exemplary damages in an amount twice the total of the damages recovered for actual loss as permitted by 18 U.S.C. § 1836(b)(3)(C).

159. Veritiv is also entitled to an award of attorneys' fees pursuant to 18 U.S.C. §1836(b)(3)(D).

**NINTH CLAIM FOR RELIEF FOR MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT (ACTUAL & THREATENED)**
**(Against Defendant Mora)**

160. Veritiv hereby incorporates by reference and realleges each of the allegations above as though fully set forth in their entirety in this claim for relief.

161. At all relevant times, Veritiv was in possession of trade secret information as defined by California's Uniform Trade Secrets Act ("CUTSA"), Civil Code section 3426.1(d). As provided above, Mora was given access to and provided with Veritiv's trade secrets, subject to Veritiv's confidentiality and computer security agreements and policies.

162. The Veritiv information misappropriated by Mora constitutes trade secrets because Veritiv, as described herein, derives independent economic value from that information, such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy. Veritiv's trade secret information described herein is not and was not generally known to Veritiv's competitors in the industry.

163. Veritiv is informed and believes and therefore alleges Mora did misappropriate and continue to threaten to misappropriate Veritiv's trade secrets in violation of CUTSA.

164. Veritiv is informed and believes and therefore alleges Mora improperly used and disclosed and/or intend to continue to improperly use or disclose Veritiv's trade secrets to others in violation of CUTSA. This use or disclosure directly violates Mora's confidentiality and other legal obligations owed to Veritiv.

165. By reason of the foregoing, Veritiv requests that this Court grant permanent injunctive relief as requested herein. Veritiv has no adequate remedy at law. Unless injunctive relief is granted, Veritiv will continue to be irreparably harmed in a manner not fully compensable by money damages.

166. As a result of Mora's misappropriation and threatened misappropriation of Veritiv's trade secrets, Veritiv has suffered, and will continue to suffer, irreparable harm, as well as damages in an amount to be proven at the time of trial, but which are substantial and in excess of the minimum jurisdictional amount of this Court. Such damages include, but are not limited to, the significant costs incurred because of Mora's unlawful conduct (including investigation and forensic costs and attorney's fees), and Veritiv's employees spending significant time in re-directing their efforts to address Mora's misappropriation and threatened misappropriation of Veritiv's trade secrets.

167. Veritiv is informed and believes and therefore alleges Mora's acts of misappropriation and threatened misappropriation have been willful, fraudulent, and malicious. Therefore, Veritiv is entitled to an award of punitive or treble damages and attorneys' fees pursuant to Civil Code sections 3426.3(c) and 3426.4.

## TENTH CLAIM FOR RELIEF FOR UNFAIR COMPETITION
## (Against Defendant Mora)

168. Veritiv hereby incorporates by reference and realleges each of the allegations above in paragraphs 1 through 146 as though fully set forth in their entirety in this claim for relief, specifically excluding, however, those discrete allegations that solely

allege misappropriation of Veritiv's trade secrets. This cause of action is not based on the misappropriation of any trade secrets. Rather, Veritiv bases this cause of action on the actions of Mora in engaging in certain breaches of duty, and fraudulent behavior that violate California's Unfair Competition Law.

169. Veritiv specifically does not seek relief for the misappropriation of trade secrets under this claim but rather its statutory rights under California Business and Professions Code section 17200 et seq., which prohibits unfair competition, including unlawful, unfair, and fraudulent business practices.

170. Mora's actions were a deliberate scheme and plan to disrupt and interfere with Veritiv's valuable business relationships, deprive Veritiv of the benefits of its own substantial investment and efforts, and benefit himself personally through improper and unlawful means.

171. Mora engaged in "unlawful" and "fraudulent" business practices by breaching his duty of loyalty to Veritiv while still employed, including by falsely representing that he would comply with Veritiv's instructions and obligations, while secretly taking steps to conceal his misconduct. Mora's false promises and deceptive conduct induced Veritiv to rely on his continued loyalty and compliance, causing Veritiv to suffer harm.

172. Mora's conduct also constitutes "unfair" business practices under the UCL because he subverted Veritiv's internal safeguards to gain access to Veritiv's business relationships and strategic positioning through deceit and disloyalty. These allegations are independent of Mora's misappropriation of trade secrets and are based on separate wrongful conduct.

173. As a result of Mora's conduct, Veritiv suffered injury in fact, including the diversion of internal resources to investigate and respond to the misconduct, disruption of customer relationships, and the threat of lost business opportunities.

174. Veritiv is informed and believes and therefore alleges that as a proximate result of Mora's acts as alleged above, Veritiv to date has suffered, and will continue to

suffer, damages unless Mora is enjoined. Thus, as a proximate result of Mora's wrongful acts, Veritiv is entitled to restitution as provided for by California Business and Professions Code section 17200 et seq. and a constructive trust in which Mora, as a constructive trustee, holds any income, profits, commissions, fees, revenues, or other funds, he received as a result of his wrongful acts alleged herein, for Veritiv's benefit.

175. Mora's wrongful conduct will continue unless and until enjoined and restrained by order of this Court. Without such involvement, Mora's wrongful conduct will cause great and irreparable injury to Veritiv's business.

176. Veritiv has no adequate remedy at law for the injuries currently being suffered. Veritiv is entitled to a permanent injunction against Mora, as prayed herein.

## **REQUEST FOR PERMANENT INJUNCTIVE RELIEF**

177. Veritiv hereby incorporates by reference and re-alleges each of the allegations contained in the above paragraphs as though fully set forth in their entirety in this claim for relief.

178. Veritiv demonstrated, and the evidence to be presented at a hearing and/or trial will show, that Veritiv has a likelihood of success on the merits of one or more of its claims set forth in this Complaint.

179. Veritiv will be irreparably harmed without permanent injunctive relief.

180. A balancing of the equities favors the entry of permanent injunctive relief in favor of Veritiv and, without the entry of such relief, Veritiv will suffer a greater hardship than Mora would suffer if such relief were entered.

181. Veritiv has no adequate remedy at law.

182. It is in the public interest that trade secrets and other confidential information remain protected and that the integrity of protected computers remains intact. The alternative includes improper use, disclosure, and retention of confidential and trade secret information, unauthorized access to protected computers, and use of such access to commit fraud, transfer information, or destroy data.

## PRAYER FOR RELIEF

WHEREFORE, for the wrongful acts of Mora complained of in the foregoing causes of action, Veritiv respectfully requests the following relief:

A. Judgment in its favor and against Mora;

B. Permanent injunctive relief prohibiting Mora and all those acting in concert with him from any possession, disclosure, and/or use of Veritiv's trade secret and confidential information;

C. An award of compensatory, consequential, economic, general, and special damages, as alleged above, in an amount and nature to be proven after the discovery of all relevant evidence and trial, including, without limitation:

a. actual damages,
b. lost profits,
c. disgorgement of profits and other ill-gotten gains,
d. reasonable royalties,
e. established royalties,
f. loss of value of the trade secrets,
g. head-start damages,
h. sweat equity damages,
i. avoided development costs, and/or
j. unjust enrichment;

D. An award of compensatory damages to Veritiv in an amount to be determined at a hearing and/or trial including, but not limited to, the attorneys' fees, computer forensic fees, and costs Veritiv has incurred to investigate and address Mora's unauthorized access and improper use of Veritiv's computers;

E. An order directing Mora to disgorge all gross revenues and profits that he or anyone acting in concert or participation with him received as a result of his wrongful conduct, in an amount to be determined at trial;

F. An award in favor of Veritiv for its costs associated with this action,

including, without limitation, its attorneys' fees pursuant to the common law and under the Defend Trade Secrets Act, California Uniform Trade Secrets Act, Computer Fraud and Abuse Act, and California Penal Code § 502;

G. An award in favor of Veritiv for its costs, damages, and computer forensics and related investigation fees and costs pursuant to the Computer Fraud and Abuse Act and California Penal Code § 502;

H. An award of exemplary damages in an amount twice the total of the damages recovered for actual loss as permitted by 18 U.S.C. § 1836(b)(3)(C) and California Civil Code § 3426.3;

I. An award of punitive damages in an amount to be determined at trial;

J. An award of attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D) and California Civil Code § 3426.4;

K. Compensation to Veritiv for any unjust enrichment enjoyed by Mora, including restitution of all revenues, gains, profits, and advantages obtained by Mora as a result of his wrongful and unlawful conduct, in an amount to be determined at a hearing and/or trial;

L. An award of pre-judgment and post-judgment interest as permitted by law;

M. An order imposing a constructive trust; and

N. Any such other legal and equitable relief as the Court deems appropriate.

DATED: November 13, 2025

SEYFARTH SHAW LLP

By: *_/s/ D. Joshua Salinas_*
D. Joshua Salinas
Robert C. Stevens (admitted *pro hac vice*)
Attorneys for Plaintiff VERITIV LANDSBERG

**JURY DEMAND**

In accordance with Rules 38 and 39 of the Federal Rules of Civil Procedure, Veritiv Landsberg asserts its rights and demands a trial by jury on all issues triable by a jury.

DATED: November 13, 2025

SEYFARTH SHAW LLP

By: */s/ D. Joshua Salinas*
D. Joshua Salinas
Robert C. Stevens (admitted *pro hac vice*
Attorneys for Plaintiff VERITIV LANDSBERG