HAYNES AND BOONE, LLP
Tamara I. Devitt/Bar No. 209683
tamara.devitt@haynesboone.com
Matthew E. Costello/Bar No. 295062
matthew.costello@haynesboone.com
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
T: (949) 202-3000 | F: (949) 202-3001

THE WORKPLACE COUNSEL
Stephen B. Rotter (pro hac vice)
stephen@theworkplacecounsel.com
1401 Lawrence Street, Suite 1600
Denver, Colorado 80202
720.775.5330

JOHN D. WILSON (SBN 94624)
LAW OFFICES OF JOHN D. WILSON
1875 Century Park East, Suite 2230
Los Angeles, California 90067
Telephone: (310) 277-2323
Email: johnw@jdwilsonlaw.net

Attorneys for Defendant
ERNEST PACKAGING

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VERITIV LANDSBERG, a California corporation;<br><br>Plaintiff,<br><br>v.<br>ANTHONY MORA, an individual; JON KEMMER, an individual; and ERNEST PACKAGING, a California corporation,<br><br>Defendants. | Case No. 8:25-cv-02418-JVS-ADS<br><br>Assigned to: Hon. James V. Selna<br>U.S. District Judge<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ERNEST PACKAGING'S MOTION FOR MONETARY SANCTIONS AGAINST PLAINTIFF VERITIV LANDSBERG** |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Veritiv filed the Initial Complaint and TRO Application against Ernest without any factual predicate for doing so ..... 2

B. Veritiv's forensic analysis revealed no Ernest-Mora connection ..... 3

C. Ernest's counsel informed Veritiv's counsel that the TRO Application's premise was false before the opposition deadline ..... 4

D. Veritiv subsequently dropped Ernest from the action ..... 5

E. Ernest reasonably, but unsuccessfully, sought to resolve this dispute without motion practice ..... 5

III. ARGUMENT ..... 6

A. Legal standards ..... 6

B. Veritiv's conduct warrants sanctions under either Section 1927 or the Court's inherent powers ..... 8

1. Veritiv recklessly multiplied proceedings and lacked an evidentiary basis ..... 8

2. Veritiv's abandoning of claims against Ernest confirms the emergency relief sought was meritless from the outset ..... 11

C. Ernest is entitled to recover its reasonable fees ..... 11

IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Al-Mansur v. Cty. of Alameda*,
No. 24-cv-06909-AMO, 2025 U.S. Dist. LEXIS 103562 (N.D. Cal. May 30, 2025) ........ 11

*B.K.B. v. Maui Police Dep't*,
276 F.3d 1091 (9th Cir. 2002) ........ 7, 8

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*,
No. 5:20-cv-06846-EJD, 2025 U.S. Dist. LEXIS 149766 (N.D. Cal. Aug. 4, 2025) ........ 7, 10

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ........ 7, 8

*Gallagher v. Kopera*,
789 F. Supp. 277 (N.D. Ill. 1992) ........ 9

*Gurwin v. UBS Fin. Servs.*,
No. 07-10323, 2008 U.S. Dist. LEXIS 31208 (E.D. Mich. Apr. 16, 2008) ........ 9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ........ 12

*Intelsat United States Sales LLC v. Juch-Tech, Inc.*,
2014 U.S. Dist. LEXIS 203540 (D.D.C. Oct. 15, 2014) ........ 10

*In re Keegan Mgmt. Co., Sec. Litig.*,
78 F.3d 431 (9th Cir. 1996) ........ 7

*Lake v. Hobbs*,
643 F. Supp. 3d 989 (D. Ariz. 2022) ........ 10

*Nelson v. Patel,*
*No. CV 09-07722 DDP (JEMx)*, 2010 U.S. Dist. LEXIS 44497 ........ 8, 11, 12

*In re Start the Engines*,
219 B.R. 264 (Bankr. C.D. Cal. 1998) ........ 7

*In re Yagman*,
796 F.2d 1165 (9th Cir. 1986) ........ 8

**Statutes**

28 U.S.C. § 1927 ........ *passim*

**Other Authorities**

Federal Rule of Civil Procedure 11 ........ 6, 9, 10

Local Rule 7-3 ........ 5, 12

# I. INTRODUCTION

Defendant Ernest Packaging ("Ernest") moves this Court for an order imposing monetary sanctions against Plaintiff Veritiv Landsberg ("Veritiv") pursuant to 28 U.S.C. § 1927 ("Section 1927") and this Court's inherent authority.

The basis for this Motion is straightforward. Veritiv filed an Ex Parte Application for a Temporary Restraining Order (the "TRO Application") seeking sweeping, invasive "emergency" injunctive relief against Ernest based on alleged wrongful conduct by Anthony Mora ("Mora") — an individual who has never been employed or otherwise engaged by Ernest in any capacity. Despite being expressly informed by Ernest's counsel (before Ernest's deadline to file opposition papers) that the TRO Application was wholly improper given that Mora was not and has never been employed by Ernest, Veritiv refused to withdraw its TRO Application, stating only that it was likely that a "deal" would be made between Veritiv and Mora on a stipulated preliminary injunction to obviate the need for the TRO Application. Without any clarity or finality on the supposed agreement between Mora and Veritiv before its 5pm deadline to oppose the TRO Application, and to reserve all defenses and prevent an injunctive order that would prejudice and cause severe detriment to Ernest's business, Ernest nevertheless had to file opposition papers and incur unnecessary attorneys' fees and costs opposing an emergency motion predicated on demonstrably false rumors and double hearsay (a Veritiv employee's unverified statement that he had "heard" Mora left Veritiv for Ernest).

The impropriety of Veritiv's conduct is underscored by its subsequent actions. On November 13, 2025, Veritiv filed its First Amended Complaint, in which it dropped all claims against Ernest. This tacit admission that its claims against Ernest were baseless came only after Ernest had already been forced to expend substantial resources responding to Veritiv's meritless TRO Application. Ernest now seeks an award of its reasonable attorneys' fees incurred in conferring about and opposing the TRO Application, and conferring about and bringing this Motion.

## II. BACKGROUND

### A. Veritiv filed the Initial Complaint and TRO Application against Ernest without any factual predicate for doing so.

On October 24, 2025, Veritiv filed its Initial Complaint against Ernest and Mora, claiming its case "arises from a coordinated scheme by former Veritiv employees and their new employer, Ernest, to unlawfully manipulate the competitive landscape and accelerate Ernest's market position by misappropriating Veritiv's trade secrets and confidential information and engaging in anticompetitive conduct targeting Veritiv's business." (ECF No. 1 ["Compl."] at ¶ 1.) On that false premise, which was remarkably easy for Veritiv's counsel to investigate before alleging, Veritiv alleged claims against Ernest for unauthorized access to and misuse of Veritiv's computer systems and data (i.e., a criminal act carrying criminal penalties), computer fraud and abuse, intentional and negligent interference with prospective economic advantage, misappropriation of trade secrets under state and federal law, and unfair competition. (*Id.* at pp. 23-39.)

The claims against Ernest were based entirely on Veritiv's unsupported charge that "Ernest is vicariously liable through the doctrine of respondeat superior for the acts of Mora . . . result[ing] and aris[ing] from the pursuit of [his] employers' interests, to wit, operating and growing Ernest's business by using, manipulating, and/or exploiting Veritiv's valuable business assets. . . within the scope of [his] employment or agency for Ernest." (*Id.* at ¶¶ 103-04.)

On October 28, 2025, at approximately 5:00 p.m., Veritiv filed the TRO Application against Ernest and Mora, seeking emergency injunctive relief and invasive forensic imaging of Ernest's computer systems based on the theory that Ernest was Mora's "new employer" and Mora took Veritiv's alleged trade secrets and confidential information to Ernest. In the TRO Application, Veritiv weaved a fantastical story of a "calculated and unlawful scheme" by Mora and Ernest "to misappropriate Veritiv's confidential, proprietary, and trade secret information in

the days leading up to and immediately following his resignation from Veritiv and to use them on behalf of his new employer [Ernest].” (ECF No. 15-1 [“TRO App.”], at 1.) Veritiv further claimed that “Mora’s misconduct was not isolated” but “part of a broader pattern of unfair competition orchestrated in coordination with Ernest, a direct competitor of Veritiv.” (*Id.*)

Veritiv’s TRO Application asserted that Ernest was Mora’s “new employer” without any citation to evidence filed in support of the Application. Looking to the support filings, the sole evidentiary basis for this assertion was a sworn declaration from Barbara Hamilton, Veritiv’s Global Director of Design and Engineering, who averred: ***“On October 17, 2025, I learned from Mr. Mora’s manager at Veritiv that he had heard Mr. Mora would be joining Earnest [sic].”*** (ECF No. 15-3 [“Hamilton Decl.”], at ¶ 28.) This double-hearsay statement — a declarant recounting what another person claimed to have “heard” from someone else — ***constituted the entirety of Veritiv’s purported evidence connecting Mora to Ernest.*** Otherwise, Veritiv’s TRO Application and supporting papers identified no communications, offer letters, non-hearsay evidence, device logs, internet or social media materials, or any other indicia tying Mora to Ernest or placing any Veritiv material from Mora in Ernest’s possession or control.

**B. Veritiv’s forensic analysis revealed no Ernest-Mora connection.**

In the TRO Application, Veritiv set forth purported concerns of Mora’s alleged attachment of several USB devices and handling of design/CAD assets before leaving Veritiv. (*See, e.g.*, TRO App. at 7-8.) However, nowhere in the TRO Application or in any the supporting evidence did Veritiv mention Ernest in any capacity or relation to Mora’s alleged conduct. Even more, the declarations presented in support of the TRO Application include detailed “forensic analysis,” “review of activity logs,” “transfer of files,” “review of device activity,” “review of screenshots,” of a number of computers/laptops, information systems, wifi networks, device names, product names, serial numbers, flash drives, storage drives,

file names, USB drives, and hard drives. (*See generally* ECF Nos. 15-3 to 15-6 [declarations of Brandt, Jensen, Hamilton, and Nerf].) In fact, Veritiv used its internal specialists to assess, audit, review, and examine Mora's alleged electronic activities, including its Senior Security Operations Manager, Greg Jensen, and its Global Director of Design and Engineering (Barbara Hamilton). Yet, at no point in the TRO Application did Veritiv provide a nexus to Ernest or its systems or files.

### C. Ernest's counsel informed Veritiv's counsel that the TRO Application's premise was false before the opposition deadline.

Per the Court's Procedure, Ernest had only 24 hours to oppose the TRO Application. On October 29, 2025, at around 1:25 p.m. PST, counsel for Ernest, Stephen Rotter, ***took three minutes*** to call WestRock Packaging Solutions ("WestRock") to confirm that Mora is a Design Manager with WestRock and his business email is amora@victorypackaging.com. Clearly, Veritiv and its counsel failed to do the same before filing the Complaint, filing the TRO Application, and levy serious accusations against Ernest. (Rotter Decl. ¶ 2.)

Soon after his call with Westrock, Mr. Rotter phoned Veritiv's counsel, Joshua Salinas, to inform him that the foundational premise for bringing suit filing the TRO Application against Ernest was false, in that Mora had never worked for Ernest, was not employed by Ernest, had never been interviewed by Ernest, and was in fact employed by a third-party company (which Mr. Rotter verified by calling that company directly).[1] (*Id.* at ¶ 3.) Mr. Rotter suggested that Vertiv or its counsel also call WestRock to verify Mora's current employment as Mr. Salinas indicated he needed more information before contemplating withdrawing the TRO Application against Ernest. (*Id.*)

[1] Ms. Hamilton's declaration's hearsay statement regarding "hearing" from someone who "heard" from someone else that Mora had joined Ernest is dated October 17, 2025. (Hamilton Decl. ¶ 28.) Yet, at no time did Veritiv or its counsel make a phone call or send an email to either Westrock, Ernest, or Ernest's counsel (with whom Veritiv was well familiar) to confirm where Mora worked.

Instead, Veritiv's counsel refused to perform any further investigation related to its baseless and false assertions about Mora's employment, and would not agree to withdraw the TRO Application as to Ernest. Later that afternoon, Mr. Salinas informed Mr. Rotter that he was ***negotiating*** a ***potential*** stipulated preliminary injunction with Mora's counsel that ***could*** resolve the TRO Application as to Ernest and that, in Mr. Salinas' view, no further briefing was necessary. (*Id.* at ¶ 4.) Faced with an imminent filing deadline and uncertainty as to whether Veritiv would proceed with its TRO Application against Ernest, Ernest was forced to prepare and file opposition papers, incurring significant and unnecessary legal fees and costs. As it turned out, Veritiv did not file, and the Court did not enter, the Stipulation for Entry of Preliminary Injunction ***until the next day, October 30, 2025***, well past Ernest's deadline to file its TRO Application opposition. (ECF Nos. 21, 25.)

**D. Veritiv subsequently dropped Ernest from the action.**

Having been caught in the act, on November 13, 2025, Veritiv filed its operative First Amended Complaint which dropped Ernest as a defendant and brought claims only against Mora. (ECF No. 32.)

**E. Ernest reasonably, but unsuccessfully, sought to resolve this dispute without motion practice.**

On December 22, 2025, Ernest's counsel sent a letter to initiate the Local Rule 7-3 meet-and-confer process, outlining the bases for a sanctions motion and offering to resolve the matter without motion practice. (Costello Decl. ¶ 2, Exh. A.) Veritiv responded on January 2, 2026, and the parties conducted a meet-and-confer teleconference on January 7, 2026. (*Id.* at ¶¶ 3-4, Exh. B.) During the teleconference, among other topics discussed, Veritiv asked Ernest to provide additional case law supporting its intended sanctions motion and a description of the amount of fees it would seek in that motion. (*Id.* at ¶ 4.)

Therefore, on January 12, 2026, Ernest's counsel sent a further letter offering to resolve the dispute in exchange for reimbursement of $10,815 in attorneys' fees

and costs incurred in responding to the TRO Application and conferring on these issues. (*Id.* at ¶ 5, Exh. C.) On January 16, 2026, Veritiv responded by letter, not agreeing to pay such fees and costs, but instead asking for "an allocation identifying the fees Ernest incurred in responding to the TRO from those incurred in connection with the contemplated sanctions motion." (*Id.* at ¶ 6, Exh. D.) Counsel for Ernest emailed counsel for Veritiv on January 21, 2026, stating in relevant part:

> "We've been discussing this issue since you wrongly named Ernest in the TRO Motion and we've tried to resolve it by at least getting our attorney's fees paid. Our exchange of letters have hit their limit. We've laid out our position in two letters and in our videoconference, and there's nothing really more to discuss if you continue to disagree with our position. In your first letter and at our videoconference, your team asked what the attorney's fees would be to resolve this and we've provided that amount, which is reasonable and fair for the work performed. We're not going back and forth any longer and have more than met our duty to meet and confer."

(*Id.* at ¶ 7, Exh. E.)

Because Veritiv did not subsequently agree to pay the amount of fees and costs sought, Ernest now brings this Motion. (*See id.*)

## III. ARGUMENT

### A. Legal standards.

Ernest moves for monetary sanctions under Section 1927 and this Court's inherent authority.[2]

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The statute authorizes

[2] Rule 11 does not strictly apply here because Veritiv filed the First Amended Complaint abandoning claims against Ernest. Still, the same facts that would support Rule 11 sanctions support a finding of recklessness and/or bad faith on the part of Veritiv sufficient to warrant sanctions under Section 1927 and the Court's inherent powers. Thus, this Court should find Rule 11 cases as persuasive authority.

sanctions "for the multiplication of proceedings" — that is, "to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996); *In re Start the Engines*, 219 B.R. 264, 272 (Bankr. C.D. Cal. 1998) (same). While Section 1927 does not reach initial pleadings that create a case, it does reach discretionary filings made after a case has begun that multiply proceedings, particularly where such filings lack a factual predicate. "Section 1927 sanctions must be supported by a finding of subjective bad faith," which "is present when an attorney knowingly ***or recklessly*** raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) (citation omitted) (emphasis added). For example, "courts may consider issues surrounding the timing of an action or whether plaintiffs insisted on proceeding even after the action's fatal shortcomings are revealed by opposing counsel." *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 5:20-cv-06846-EJD, 2025 U.S. Dist. LEXIS 149766, at *9 (N.D. Cal. Aug. 4, 2025) (citations omitted).

Similarly, federal courts possess inherent authority to impose sanctions, including an award of attorneys' fees, "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . or has taken actions in the litigation for an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). While "mere recklessness" may be insufficient standing alone, "sanctions may be awarded where recklessness is combined with an additional factor such as frivolousness, harassment, or an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain a tactical advantage in another case." *Id.* at 994; *see also B.K.B.*, 276 F.3d at 1107-08. Under *Fink*, "for purposes of imposing sanctions under the inherent power of the court, a finding of bad faith ***does not require that the legal and factual basis for the action prove totally frivolous***; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the

assessment of attorney's fees." 239 F.3d at 992 (internal quotation marks omitted). In sum, "sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith, . . . including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." 239 F.3d at 994. "[A]n attorney's reckless misstatements of law and fact, when coupled with an improper purpose, . . . are sanctionable under a court's inherent power." *Id.*

At bottom, "recklessness suffices for [Section] 1927, but bad faith is required for sanctions under the court's inherent power." *B.K.B.*, 276 F.3d at 1107.

**B. Veritiv's conduct warrants sanctions under either Section 1927 or the Court's inherent powers.**

1. Veritiv recklessly multiplied proceedings and lacked an evidentiary basis.

The Initial Complaint, not Veritiv's TRO Application, was the initial pleading that created this case. The TRO Application was a separate, discretionary *ex parte* filing brought days after the filing of Initial Complaint. This is precisely the type of post-filing paper that Section 1927 targets. *See In re Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986) ("Section 1927 does not apply to initial pleadings, since it addresses only the multiplication of proceedings. It is only possible to multiply or prolong proceedings after the complaint is filed."); *Nelson v. Patel, No. CV 09-07722 DDP (JEMx)*, 2010 U.S. Dist. LEXIS 44497, at *14-15 (C.D. Cal. Mar. 26, 2010) (finding a post-complaint notice of removal not to be an initial pleading for Section 1927 sanctions purposes)

The TRO Application multiplied proceedings by requiring Ernest to prepare and file emergency opposition papers under an extremely tight deadline and incur significant legal fees responding to unfounded claims (e.g., Mora misappropriated confidential, proprietary, and trade secret information "to use them on behalf of" Ernest; Mora's "misconduct was not isolated" but rather "part of a broader pattern of unfair competition orchestrated in coordination with Ernest, a direct competitor")

Veritiv knew, or should have known, were baseless, and in an attempt to stave off an injunction that would have had a profound impact on Ernest's business.

Veritiv pursued intrusive *ex parte* relief against Ernest without any evidentiary support. The only purported "evidence" connecting Mora to Ernest was a double-hearsay statement ***from an unnamed Veritiv manager*** who claimed to have "heard" that Mora would be joining Ernest ***from someone else***. This rumor does not constitute sufficient evidence to have haled Ernest into court to defend against a temporary injunction on an *ex parte* basis. This Court, like others, should find sanctions appropriate where, as here, a party pursues relief supported only by alleged double hearsay rather than admissible evidence. *See Gurwin v. UBS Fin. Servs.*, No. 07-10323, 2008 U.S. Dist. LEXIS 31208, at *8-10 (E.D. Mich. Apr. 16, 2008) (awarding Rule 11 sanctions where plaintiff used double hearsay to support factual contentions in opposition to motion for summary judgment); *cf. Gallagher v. Kopera*, 789 F. Supp. 277, 278 (N.D. Ill. 1992) (finding that "a duty of reasonable precomplaint inquiry not satisfied by rumor or hunch")

Moreover, if any of Mora's alleged conduct had any nexus whatsoever to Ernest, Veritiv would have known well before filing the TRO Application against Ernest based on Veritiv's own detailed forensic work. Having shown none, Veritiv nonetheless proceeded with filing the TRO Application and asked the Court to infer possession and maleficent from conjecture, false assumptions supported by inadmissible double hearsay, and a lack of proper investigation (one that took only minutes for Mr. Rotter to undertake with Westrock).

As in *Gurwin*, "even if these hearsay issues were not immediately apparent to" Veritiv when it "initially sought to use them to support" the TRO Application, Ernest's counsel "point[ed] out the deficiencies" (i.e., Mr. Rotter explicitly told Mr. Salinas that Mora worked for WestRock and relayed that he had called Westrock to verify Mora's employment). *Gurwin*, 2008 U.S. Dist. LEXIS 31208, at *8. Yet, "Plaintiff's counsel continued to pursue the [TRO Application against Ernest] and

continued to use the hearsay evidence in support." *Id.* What elevates Veritiv's conduct from mere negligence to sanctionable behavior is its refusal to withdraw the TRO Application after being expressly informed that its foundational premise was false. Facing a 5:00 p.m. opposition deadline, and without a stipulated injunction on file, Ernest was therefore forced to unnecessarily prepare and file opposition papers under a tight, same-day deadline. Veritiv's refusal to withdraw an *ex parte* application known to be baseless based on Ernest's counsel's representations (made as an officer of the court) demonstrates the recklessness, combined with frivolousness and improper purpose, that warrants sanctions under both Section 1927 and the Court's inherent authority. *See Elite Semiconductor, Inc.*, 2025 U.S. Dist. LEXIS 149766, at *6-13, 16-17 (awarding monetary sanctions under the Court's inherent authority where the evidence showed that plaintiff should have known that its claims were objectively specious and the court inferred subjective bad faith from circumstantial evidence, including "lack of regard for the factual accuracy of the representations it made"); *Intelsat United States Sales LLC v. Juch-Tech, Inc.*, 2014 U.S. Dist. LEXIS 203540, at *19 (D.D.C. Oct. 15, 2014) (awarding Rule 11 sanctions where tortious interference theory relied exclusively on conjecture and unsubstantiated rumors and affidavit demonstrated "a failure" to "attempt to corroborate the second-hand assertions that were made by" witnesses and to "contact[] the original, third-party sources of the information who would be necessary to sustain a tortious interference claim"); *Lake v. Hobbs*, 643 F. Supp. 3d 989, 1011 (D. Ariz. 2022) (holding that Section 1927 sanction was warranted where, under the circumstances, it was objectively unreasonable and vexatious for Plaintiffs' counsel to initiate additional, time- and resource-intensive preliminary injunction proceedings based on frivolous claims and to continue making false and misleading representations about Arizona elections"). Even if Veritiv's counsel did not want to rely on Mr. Rotter's proffer regarding Mr. Mora's employment, Veritiv or its counsel could have (and should have) taken a few minutes to actually

investigate the statements it made to the Court in a pleading signed by its attorneys — a basic legal and ethical requirement of any attorney.

2. Veritiv's abandoning of claims against Ernest confirms the emergency relief sought was meritless from the outset.

Veritiv's decision to drop Ernest in its First Amended Complaint confirms what Ernest told Veritiv from the outset: the claims against Ernest had no factual basis. Veritiv cannot claim that it acted in good faith when it filed claims against Ernest that it later abandoned without any discovery, any responsive pleading by Ernest, and no change in circumstances other than the confirmation that Mora did not work for Ernest — a fact that Ernest's counsel had communicated before the TRO opposition deadline, should have been apparent based on Veritiv's forensic analysis, and could have been verified by a simple call to WestRock.

**C. Ernest is entitled to recover its reasonable fees.**

Having demonstrated that sanctions are warranted, Ernest seeks an award of its reasonable attorneys' fees incurred in: (1) corresponding with Veritiv's counsel regarding the inclusion of Ernest in, and refusal to drop Ernest from, the TRO Application; (2) opposing the TRO Application; and (3) conferring about, and drafting, this motion for sanctions and supporting papers (collectively, the "TRO Application and Sanction Motion Fees").

"In cases where attorney's fees are awarded as a sanction, courts have applied traditional methods for calculating the fee award, including . . . the lodestar analysis." *Al-Mansur v. Cty. of Alameda*, No. 24-cv-06909-AMO, 2025 U.S. Dist. LEXIS 103562, at *16-20 (N.D. Cal. May 30, 2025) (citing *Lahiri v. Univ. Music and Video Distrib. Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010)); *Nelson*, 2010 U.S. Dist. LEXIS 44497, at *27 ("Reasonable attorney's fees are determined by following the two-step 'lodestar' approach."). To calculate the lodestar, the court must: (1) multiply "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate"; and (2) consider whether to adjust the lodestar figure.

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Nelson*, 2010 U.S. Dist. LEXIS 44497, at *27 (citing cases).

Here, the hours expended on tasks for the TRO Application and Sanction Motion Fees sought by Ernest are as follows:

**Table 1**
**Hours Expended**

| | | Description of Tasks and Hours | | | |
|---|---|---|---|---|---|
| | | Conferring and Researching before Filing TRO App. Opp. | Drafting TRO App. Opp. | Conferring and Researching re Sanctions Motion Pursuant to LR 7-3 | Drafting Sanctions Motion, incl. Further Research, and Supporting Docs |
| Attorney Name | Stephen Rotter | 3.6 | 5.0 | 1.0 | 1.5 |
| | John Wilson | 1.5 | 2.5 | 0.5 | 0.5 |
| | Matthew Costello | 0 | 0 | 5.7 | 13.5 |

(*See* Rotter Decl. ¶ 5; Costello Decl. ¶ 8; Wilson Decl. ¶ 2.) Based on the hours expended, and counsel's hourly billing rates, Ernest seeks TRO Application and Sanction Motion Fees in the amount of $6,105 for Mr. Rotter's hours expended, $17,702 for Mr. Costello's hours expended, and $3,250 for Mr. Wilson's hours expended, totaling $27,057, which is reasonable in relation to the type and amount of work incurred to appropriately seek sanctions for Veritiv's reckless and bad faith conduct. (*See id.*)

## IV. CONCLUSION

For all the foregoing reasons, Ernest respectfully requests that the Court order Veritiv to pay Ernest $27,057 in sanctions pursuant to Section 1927 and/or the Court's inherent authority to sanction conduct abusive of the judicial process.

Date: February 17, 2026

HAYNES AND BOONE, LLP
By: */s/ Matthew E. Costello*
Matthew E. Costello
Attorneys for Defendant
ERNEST PACKAGING

**L.R. 11-6.2. Certificate of Compliance**

The undersigned, counsel of record for Defendant Ernest Packaging, certifies that this brief contains 3,858 words, which complies with the word limit of L.R. 11-6.1.

Date: February 17, 2026

*/s/ Matthew E. Costello*
Matthew E. Costello