UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:25-cv-02418-JVS-ADS | Date | April 8, 2026 |
| Title | Veritiv Landsberg v. Anthony Mora et al. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| | |
|---|---|
| P. Deason for Elsa Vargas | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings: [IN CHAMBERS] Order Regarding Defendant Ernest Packaging's Motion for Sanctions [36]**

Before the Court is a Motion for Sanctions by Defendant Ernest Packaging ("Ernest"). (Mot., Dkt. No. 36-1.) Plaintiff Veritiv Landsberg ("Veritiv") opposed. (Opp'n, Dkt. No. 40.) Ernest replied. (Reply, Dkt. No. 42.)

For the following reasons, the Court **DENIES** the Motion.

## I. BACKGROUND

This case involves allegations of trade secret misappropriation between packaging corporation Veritiv and two of its former employees, including Defendant Anthony Mora ("Mora"). (See generally FAC, Dkt. No. 32.) The original complaint also sued Ernest—another competitor packaging company—on a theory that Ernest employed Mora and was vicariously liable for Mora's alleged misconduct. (See Compl., Dkt. No. 1 ¶ 103–04.) On October 28, 2025, four days after initiating this action, Veritiv filed an ex parte application for a temporary restraining order ("TRO") ordering Ernest and Mora to "return all Veritiv trade secrets and confidential information" and preserve discovery. (Ex Parte App., Dkt. No. 15.) Ernest filed an opposition the next day. (Dkt. No. 20.) On October 30, 2025, the parties filed a joint stipulation resolving the ex parte application, which the Court adopted. (Dkt. Nos. 21, 25.) Two weeks later, Veritiv filed its First Amended Complaint ("FAC"), which dropped all claims against Ernest. (See generally FAC.)

Ernest contends that its inclusion in the original Complaint and subsequent ex parte application was meritless. (Mot. at 1.) Ernest argues that it was wrongfully

compelled to spend several attorney hours opposing an ex parte application, and thus seeks attorneys' fees for its time. (Id. at 1, 11–12.)

The Court next discusses the events underlying this Motion. In 2025, Veritiv experienced "a wave of employee departures" to multiple packaging competitors, including Ernest, during which the departing employees allegedly improperly retained Veritiv documents. (Declaration of D. Joshua Salinas ["Salinas Decl."], Dkt. No. 41 ¶ 2.) One of the departing employees was Mora, who declined to inform Veritiv of his next employer. (Id. ¶ 10.) On October 17, 2025, Veritiv received word from Barbara Hamilton ("Hamilton")—Veritiv's Global Director of Design and Engineering and a co-worker of Mora—that Mora was joining Ernest. (Id.; Declaration of Barbara Hamilton ["Hamilton Decl."], Dkt. No. 41, Ex. 3 ¶ 1.) Hamilton attests that she "learned from Mr. Mora's manager at Veritiv" (who remains unnamed) "that [the manager] heard Mr. Mora would be joining Ernest." (Id. ¶ 28.) As it turns out, this rumor was incorrect: Mora actually joined WestRock Packaging Solutions ("WestRock"), another industry competitor. (Declaration of Stephen Rotter ["Rotter Decl."], Dkt. No. 36-2 ¶ 2.)

Ernest's counsel appears to be the first to discover Mora's true employer; he learned this information from a phone call with WestRock around 1:25 p.m. on October 29, 2025, the day Ernest's opposition to the ex parte application was due. (Id.) About one hour later, Ernest's counsel informed Veritiv's counsel that Mora worked for WestRock, not Ernest. (Id. ¶ 3; Salinas Decl. ¶ 13.) Ernest's counsel then "suggested" that "Veritiv or its counsel call WestRock, as [he] had, to verify Mora's current employment . . . ."[1] (Rotter Decl. ¶ 3.) After learning this information, Veritiv's counsel declined to immediately withdraw the TRO application, stating he needed to independently verify Mora's employer. (Salinas Decl. ¶ 13.) Ernest's counsel also disclosed that "Mora's former coworkers now working at Ernest may have spoken with Mora" but maintained "it was not relevant." (Id.) Finally, Ernest's counsel shared that Ernest's opposition to the TRO application was "almost done." (Id.)

---

[1] In the Reply brief, Ernest claims that Mr. Rotter told Veritiv "the tools for independent verification: Mora's new employer's name and phone number, and Mora's new email address." (Reply at 6.) However, it does not appear that Mr. Rotter stated this in his declaration, and Ernest's brief cites to no declaration corroborating this.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:25-cv-02418-JVS-ADS | Date | April 8, 2026 |
| Title | Veritiv Landsberg v. Anthony Mora et al. | | |

Over the next several hours, it appears Veritiv did not call WestRock. (See Opp'n at 12–14; Salinas Decl. ¶¶ 14–18.) Instead, Veritiv worked with Mora's counsel to reach an agreement on a joint stipulation that would resolve the ex parte application. (See Salinas Decl. ¶¶ 14–18.) Meanwhile, Veritiv's counsel told Ernest's counsel that the parties were working on "a potential resolution of the TRO as it related to Ernest." (Id. ¶ 14.) The counsels of Veritiv and Ernest tried to schedule a second phone call before the day ended, but did not succeed. (Id. ¶¶ 14–15; Rotter Decl. ¶ 4.) Because Veritiv had not withdrawn its application by 5:00 p.m. (Ernest's opposition deadline), Ernest filed its opposition. (Rotter Decl. ¶ 4; see Dkt. No. 20.) At 5:29 p.m., Veritiv's counsel "emailed the courtroom clerk stating that the parties were discussing a resolution and that Veritiv expected to file a stipulation the next day resolving the TRO as to Ernest." (Salinas Decl. ¶ 18.) This marked the end of relevant events on October 29, 2025.

The next afternoon, Veritiv and Mora filed a joint stipulation that terminated the TRO application. (See Dkt. No. 21.) The Court did not hold a hearing on the matter. On December 22, 2025—after Veritiv had filed its First Amended Complaint dropping Ernest from the litigation—Ernest's counsel sent a letter to Veritiv's counsel indicating its intention to file a motion for sanctions that sought recovery of attorneys' fees for time spent drafting the opposition to the TRO application. (See Declaration of Matthew E. Costello ["Costello Decl."], Dkt. No. 36-4 ¶ 2 & Ex. A.) After several weeks of negotiations, the parties were unable to reach a solution, and Ernest filed the present Motion. (Id. ¶¶ 2–7.)

In total, Ernest seeks $27,057 for the labor of three attorneys on the TRO application and this Motion. (Mot. at 12.)

## II. Legal Standard

There are three bases on which a Court may levy sanctions: "(1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001).

### *A. 28 U.S.C. § 1927*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:25-cv-02418-JVS-ADS Date April 8, 2026

Title Veritiv Landsberg v. Anthony Mora et al.

Section 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "[R]ecklessness suffices for [sanctions under] § 1927"; there is no bad faith requirement. Fink, 239 F.3d at 993. Notably, section 1927 does not permit the imposition of sanctions against law firms; only individual attorneys may be sanctioned. See Kaass L. v. Wells Fargo Bank, N.A., 799 F.3d 1290, 1295 (9th Cir. 2015) ("We believe that if Congress had intended to permit federal courts to impose sanctions against law firms pursuant to 28 U.S.C. § 1927, it would have included an express authorization to do so in the statute."). Nor can the Court levy section 1927 sanctions against a party itself. See Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 (9th Cir. 1986) ("Sanctions under section 1927 may be imposed only against attorneys, and not parties . . . ."), abrogated on other grounds by Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990).

*B. Inherent Power*

The Court may also impose sanctions under its inherent authority based on "willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Fink, 239 F.3d at 991 (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980)). "[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith. Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." Id. at 994. "Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (citation omitted).

## III. DISCUSSION

Ernest brings two bases for its motions: section 1927 and the Court's inherent powers. (See Mot. at 8.) The Court discusses each in turn.

*A. Section 1927 Sanctions*

Ernest asks this Court to sanction Veritiv itself under section 1927. (See Proposed Order, Dkt. No. 36-10 at 1.) As an initial note, the Court cannot do that. Courts cannot sanction *parties* under section 1927, only individual attorneys. See Zaldivar, 780 F.2d at 831. The Court also cannot sanction Seyfarth Shaw, the law firm that represents Veritiv. See Kaass L., at 1295. Assuming sanctions are appropriate, section 1927 only allows the Court to sanction Mr. Salinas and Mr. Stevens *personally,* the attorneys of record for Veritiv who signed the ex parte application at issue. (Ex Parte App. at 26.) For the reasons described below, the Court does not find it appropriate to personally sanction either Mr. Salinas or Mr. Stevens (collectively, "Veritiv's Attorneys").

Veritiv's Attorneys handled the TRO application suboptimally, and the Court is inclined to conclude that they were negligent. This conclusion is based on several facts. First, Ernest's inclusion as a defendant was almost entirely based on a single "he said, she said" statement: Hamilton *heard* from an unnamed former supervisor of Mora that the supervisor *heard* that Mora now worked at Ernest. (See supra, Section I.) That is far short of a reasonable factual investigation. See FED. R. CIV. P. 11(b). Veritiv counters that this rumor formed the basis for its suspicion, and that the suspicion was reasonable against the "backdrop" that Veritiv is engaged in active litigation against Ernest in multiple forums for misappropriating Veritiv's trade secrets by poaching other employees. (Opp'n at 10–12.) This is not convincing—if anything, it indicates that Veritiv saw that Mora was abandoning the company and simply assumed Ernest was the culprit. Second, the Court also considers that Veritiv's Attorneys had 11 days to investigate the rumor that Mora had gone to Ernest before it filed its ex parte application and found no evidence corroborating the rumor. This timeline undermines Veritiv's narrative that this was "emergency relief" in which any level of "[d]elay carried real risk." (Opp'n at 16–17.) Finally, the Court agrees with Ernest that one of Veritiv's Attorneys could have simply called WestRock after Ernest told them that Mora worked there. When they learned this information, Veritiv's Attorneys knew that Ernest had only three hours to file its opposition, but the record indicates they did not even attempt to call WestRock. Though Veritiv's Attorneys deserve some grace for operating on a compressed timeline, it appears they were outright indifferent as to whether Ernest filed its opposition or not. In short, Veritiv's Attorneys did not exercise sufficient diligence and caution before initiating emergency proceedings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:25-cv-02418-JVS-ADS Date April 8, 2026

Title Veritiv Landsberg v. Anthony Mora et al.

Nevertheless, the Court cannot find that this negligence reaches the level of recklessness that sought an improper goal. See Fink, 239 F.3d at 994 ("Sanctions are available for . . . recklessness *when combined* with an additional factor such as frivolousness, harassment, or an improper purpose." (emphasis added)). Though the allegations of Veritiv's Attorneys were thinly supported and based too largely on assumptions, the assumptions they made were at least reasonable. Indeed, Mora refused to reveal the identity of his new employer to Veritiv, and Veritiv had no reason to know it was WestRock until *after* Ernest told them. In addition, the conduct of Veritiv's Attorneys on the afternoon of October 29, 2025—while imperfect—did not reflect frivolousness, harassment, or an improper purpose. From the moment Mr. Salinas first learned of Mora's true employer (around 2:30 p.m.), he spent the rest of the afternoon either contacting Ernest's counsel or negotiating a successful joint stipulation with Mora's counsel. (See Salinas Decl. ¶¶ 14–18.) He informed Ernest's counsel that they were nearing a resolution, at least indicating to Ernest that actual litigation of the TRO application was unlikely. In addition, although the Court is not convinced that this was an "emergency situation," the Court does agree that the loss of trade secrets is a serious, time-sensitive concern that warrants a swift response. Finally, Veritiv promptly dropped Ernest from the litigation soon after the parties resolved the TRO, undermining any idea that it had bad intentions in adding Ernest as a defendant. In sum, Veritiv's Attorneys should have handled this process with more care and improved its communication with Ernest's counsel—but those are not sanctionable shortcomings. See Ochoa v. Trek Bicycle Corp., 2011 WL 13527, at *2 (D. Ariz. Jan. 4, 2011) ("Mere negligence is insufficient to support sanctions under either § 1927 or the court's inherent power.").

Thus, the Court does not find the conduct of Veritiv's Attorneys to be sanctionable under section 1927.

*B. Inherent Power Sanctions*

The bar for sanctions under the Court's inherent power is higher than section 1927, because inherent power sanctions require bad faith or conduct tantamount to bad faith. See Fink, 239 F.3d at 993 ("[B]ad faith is required for sanctions under the Court's inherent power."); Primus, 115 F.3d at 648 (finding of bad faith "especially critical when the court uses its inherent powers to engage in fee shifting"). The Court finds no bad faith here. Indeed, aside from a few passive assertions of bad faith, Ernest does not

appear to actually argue that Mr. Salinas or anyone representing Veritiv acted in bad faith. (See Mot. at 12 (describing "work incurred to appropriately seek sanctions for Veritiv's reckless and bad faith conduct.").) Likewise, for the same reasons that the Court does not find this conduct reckless, it also concludes that this conduct was not "tantamount to bad faith." Primus, 115 F.3d at 648. Sanctions are reserved only for "rare and exceptional" circumstances. Id. at 649. This was not rare and exceptional.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion.

**IT IS SO ORDERED.**

The Court further finds that oral argument would not be helpful on this matter. Fed. R. Civ. P. 78; L.R. 7-15. Accordingly, the Court **VACATES** the April 13, 2026, hearing.